804 So.2d 705 (2001)
ALL STAR FLOOR COVERING, INC.
v.
Charles R. STITT.
No. 2000 CA 2049.
Court of Appeal of Louisiana, First Circuit.
November 14, 2001.
Rehearing Denied January 8, 2002.
*706 Robert V. McAnelly, Baton Rouge, for Appellee Plaintiff All Star Floor Covering, Inc.
Dale R. Baringer, Baton Rouge, for Appellee Intervenor Palisade Properties, Inc., Adolph P. LaPlace and Leonard J. LaPlace.
David A. Woolridge, Jr., Baton Rouge, for Appellant The Trust Company of Louisiana.
Before: FOIL, PETTIGREW and KLINE[*], JJ.
FOIL, Judge.
This appeal involves challenges made by several parties to a judgment of the trial court that granted judgment pro confesso against a garnishee and vacated a previous garnishment judgment. For the reasons that follow, we affirm the result.

FACTS AND PROCEDURAL BACKGROUND
On August 7, 1997, plaintiff, All Star Floor Covering, Inc., filed a petition against Charles R. Stitt, alleging that it *707 was the holder of three promissory notes for which Stitt was the maker and that were then due. All Star obtained a judgment against Stitt on December 11, 1997, for $20,800.00 plus interest. After the judgment became executory, All Star began looking for assets belonging to Stitt. All Star was aware that Stitt owned stock in a closely held corporation, Palisade Properties, Inc. The other stockholders in the corporation were Leonard J. LaPlace and Adolph (Ad) P. LaPlace. All Star was also aware that Stitt's stock in Palisade was being held in trust by the Trust Company of Louisiana. Accordingly, on March 27, 1998, All Star filed a petition for garnishment under a writ of fieri facias, alleging that the Trust Co. had property in its possession belonging to Stitt. On April 27, 1998, the Sheriffs Office served the Trust Co. with garnishment interrogatories and notice of seizure pursuant to the writ of fieri facias. In unsworn answers filed on May 4, 1998, the Trust Co. admitted having in its possession Palisade stock belonging to Stitt. The Trust Co. attached to its answers photocopies of two Palisade stock certificates (number 5 for 200 shares owned by Stitt and number 6 for 1 share owned by Leonard LaPlace) and the first two pages of a Voting Trust Agreement for Palisade in which the Trust Co. agreed to be the voting trustee for the voting trust created thereunder.
Effective October 13, 1998, the Trust Co. resigned as voting trustee for Palisade. On January 21, 1999, Leonard and Ad LaPlace, as owners of all outstanding voting trust certificates, appointed Ad LaPlace as successor voting trustee. When Richard Daviet, a representative of the Trust Co., prepared to deliver the records of the Voting Trust and the original Palisade stock certificates to an agent for Ad LaPlace, he discovered that the original stock certificates had been lost. On February 11, 1999, a replacement stock certificate (number 13 for 201 shares in the name of the Trust Co. as voting trustee) was issued and delivered to Daviet. He endorsed certificate number 13 for transfer to Ad LaPlace as the successor voting trustee and delivered it to an agent for Ad LaPlace at approximately 2:15 p.m. that date.
Allegedly unbeknownst to the Trust Co., All Star had obtained a garnishment judgment the day before, on February 10, 1999. The judgment ordered the Trust Co. to turn over to the sheriff the Palisade stock certificate owned by Stitt. The Trust Co. was served with the garnishment judgment only a short time after it had delivered the stock certificate to the new voting trustee, Ad LaPlace.
On February 10, 2000, All Star filed a rule to show cause and rule for judgment pro confesso, seeking to hold the Trust Co. responsible for the lost assets. On May 12, 2000, Palisade and the LaPlaces filed a petition to intervene and nullify the garnishment judgment. On that same date, the Trust Co. filed an answer to the rule to show cause and sworn answers to garnishment interrogatories.
After a hearing, the trial court granted the intervention filed by Palisade and the LaPlaces. The court ruled that the garnishment judgment of February 10, 1999, was a nullity. Recognizing that Stitt's interest in the Palisade stock had a value in excess of the amount of All Star's demand and that Stitt's interest in the stock was properly seized by All Star by the April 27, 1998 service of All Star's writ of fi fa on the Trust Co., the court rendered judgment in favor of All Star against the garnishee, the Trust Co., in the amount of $36,370.00 (the amount prayed for in the rule for judgment pro confesso). Finally, the court cast the Trust Co. for legal interest, attorney's fees of $1,500.00, and court *708 costs. This suspensive appeal taken by the Trust Co. followed, and All Star answered the appeal. The intervenors, Palisade and the LaPlaces, subsequently filed a separate devolutive appeal.

DISCUSSION
This case is governed by La. Code Civ. P. articles 2411-2417, relative to garnishment under a writ of fieri facias. A garnishment proceeding is nothing more than a streamlined legal process for obtaining the seizure of property of a judgment debtor in the hands of a third party. Houma Mortgage & Loan, Inc. v. Marshall, 94-0728, p. 4 (La.App. 1 Cir. 11/9/95), 664 So.2d 1199, 1203. The test of a garnishee's liability to the judgment creditor is whether it has in its possession the principal debtor's property, funds, or credits for the recovery of which the debtor has a present subsisting cause of action. Id. Under La.Code Civ. P. art. 2411, the seizure effected by a garnishment proceeding becomes effective upon service of the petition, citation, and interrogatories. Id., 94-0728 at p. 5, 664 So.2d at 1203. It is the garnishee's duty to answer all proper interrogatories and to make all proper disclosures concerning property of the debtor in its possession. Id., 94-0728 at p. 6, 664 So.2d at 1204. Where the garnishee's answer is not sworn as required by La.Code Civ. P. art. 2412, it will be treated as a failure to answer. Id.
Louisiana Code of Civil Procedure article 2413 addresses the effects of the garnishee's failure to answer. Under the wording of that article, the effect of the garnishee's failure to answer under oath prior to the filing of the contradictory motion to show cause is prima facie proof that the garnishee has property of the judgment debtor to the extent of the judgment, interest, and costs. Id., 94-0728 at p. 7, 664 So.2d at 1204. In other words, the failure of the garnishee to file an answer within the delay provided by law results in the plaintiff being entitled to seek a judgment pro confesso against the garnishee. Id. The judgment pro confesso is not self-executory. Article 2413 contemplates that a contradictory hearing should be conducted on the motion. Up until the time the rule is heard, the court may permit the garnishee to file its answers in an attempt to rebut the judgment creditor's prima facie case. Id., 94-0728 at pp. 7-8, 664 So.2d at 1204-1205.
Article 2415 covers the situation where the garnishee admits in its answer that it does indeed hold something belonging to the debtor. A garnishment judgment is then entered ordering the garnishee to deliver that property to the sheriff. The garnishment judgment contemplated by article 2415 simply orders the garnishee to deliver the thing to the sheriff. The sheriff then advertises it for sale in due course. Should others have competing claims to that thing, they could then attempt to enjoin the sale or bring some other legal process to recover their property. The garnishment judgment does not decree that the garnishee or anyone else actually owns the seized property, nor that they can retain the property in satisfaction of any judgment. All that the garnishment judgment means is that the garnishee is to place this garnishment in proper line for payment, and that it deliver the property to the sheriff so that the sheriff can proceed to sell the property. The garnishment judgment does not declare an owner and it does not declare which creditor has the first or highest claim to the property. All the garnishee has to do is deliver the property to the sheriff and, thereafter, the garnishee's duty is discharged.
In this case, in response to the garnishment interrogatories, the Trust Co. inserted *709 hand-written answers, attached photocopies of two stock certificates and the first two pages of the voting trust agreement, and filed the same into the record. But the responses were not answered under oath.
Relevant events in this case are as follows:
Judgment obtained against Stitt on December 11, 1997.
Petitions for garnishment filed, naming the Trust Co., Vernon Ellerbe, Ad LaPlace and Lenny LaPlace as garnishees. Writ of fi fa issued by the Clerk on March 30, 1998; notices of seizure issued by the Sheriff on April 3, 1998. Service by the Sheriff of the writs and notices on or about April 27, 1998.
Answers to interrogatories filed by the Trust Company into the suit record on May 4, 1998.
Answers to interrogatories filed by the LaPlaces on May 11, 1998.
Judgment of garnishment entered on February 10, 1999.
Stock certificate delivered by Trust Co. to Ad LaPlace on February 11, 1999, at 2:15 p.m.
Judgment of garnishment served on the Trust Co. on February 11, 1999, shortly after stock certificate was delivered to Ad LaPlace.
February 10, 2000, All Star filed rule to hold Trust Company responsible for the lost assets.
May 12, 2000, Palisade and the LaPlaces filed petition to intervene and nullify the garnishment judgment.
We hold that the trial court was in error when it nullified the garnishment judgment. The judgment of garnishment nullified by the trial court was a final judgment rendered well over a year prior to the efforts by the intervenors to nullify the same. Following the rendition and service of the judgment on February 11, 1999, no one sought a modification of the judgment, no one sought a new trial, and no one took a timely appeal. The February 11, 1999 judgment is a final judgment that can only be attacked if it is null for vices of form (La.Code Civ. P. art.2002) or if the judgment was obtained by fraud or ill practices (La.Code Civ. P. art.2004).
The reasons for nullification stated in article 2002 are not present in this case. The Trust Co. cannot be characterized as being incompetent, in the form of incompetency or lack of representation as envisioned in Subsection (1). Furthermore, Subsections (2) and (3) are inapplicable, as the Trust Co. was served both with the original petition for garnishment, interrogatories and the writ, and it was served with the judgment of garnishment, and no one is arguing that the 19th Judicial District Court did not have jurisdiction over the proceedings.
The only other grounds for nullification are those stated in article 2004, for fraud or ill practices. The interrogatories were served. The Trust Co. answered them, although in unsworn form. Based upon the statements of the Trust Co. that it was indeed holding property belonging to the judgment debtor, All Star merely submitted a garnishment judgment to the court for its handling in due course. Again, this garnishment judgment did not decree ownership, nor did it assess liability. It simply instructed the Trust Co. to deliver the stock to the sheriff. There is no basis for a claim of fraud or ill practices.
The garnishment judgment is not null on its face, as it is clearly supported by the record and by La.Code Civ. P. art. 2415. The Trust Co. filed an answer admitting to holding property belonging to Stitt. This answer was simply reduced to a judgment *710 in accordance with article 2415. That judgment is now final and unappealable. Accordingly, the trial court committed error in nullifying the final garnishment judgment.
Insofar as the unsworn answers to the interrogatories are concerned, the Trust Co. is estopped from waiting and arguing that its truthful, but unsworn, answers are not in proper form, so that it can now escape liability. The fault of the Trust Co. was not in failing to file sworn answers. Its fault was voluntarily turning over to others assets it held in its control.
The case on appeal illustrates the unfortunate situation that a relatively innocent party is held responsible for paying the debts of another. However, this is a problem that must be addressed by the legislature and not the courts. The Trust Co. is now responsible to the seizing creditor, All Star, for a partial value of property that it once held in its possession. The Trust Co. could have very easily protected itself by simply continuing to hold the stock until told by the court what to do. Accordingly, the judgment pro confesso is affirmed.
In its answer to the appeal, All Star requests additional attorney fees. We hereby increase the attorney fees by $2,000.00, which makes the total attorney fee award $3,500.00.
Based on the foregoing reasons, the judgment of the trial court is amended to increase the award of attorney fees to All Star to $3,500.00. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to both appellants, the Trust Co. and Palisade, et al.
AMENDED AND AFFIRMED.
NOTES
[*] Judge William F. Kline, Jr., Retired, serving Pro Tempore by special appointment of the Louisiana Supreme Court.